Do I need to translate the word Mishpacha? I apologize. Not for me. So, Mr. Leisher, am I pronouncing that right? That's correct, Your Honor. Signed counsel for Nichols Hansen, reserving a minute. Mr. Hansen's specific allegations about how defense counsel deprived him of his constitutional right to testify, which were neither unsubstantiated nor self-serving, stated a claim warranting a hearing. How are they substantiated? I'm sorry? How are they substantiated? Well, first of all, you have to remember that this is a private conversation, so it's very difficult to substantiate something. No, I get that, but you said they were substantiated. Yes, it's by two things. One, the specificity that he quoted defense counsel having talked to him, and also the fact. What you said was that his lawyer said he couldn't testify, that if he did, the lawyer would quit. You're saying that because he actually uses quotes, that's enough? Well, that's not enough necessarily, but the other thing is that he said of this fact that he had been doing this for more than 40 years. That is not the kind of thing that counsel would, you know, that the defendant would know. And, in fact, it's true. Why wouldn't it be the sort of thing that a lawyer might say in an entirely legitimate advice, which the lawyer is required to give, as to what course of action the defendant should follow? I've been doing this for a long time. I can tell you that this is how juries react, or I can tell you that this is how judges respond to someone who takes the stand and the judge thinks they were lying. And so this is why it's not in your interest to do that. Defense counsel had a chance to say that, and he did not. So your point on that is the lawyer gives an account that is substantially inconsistent with what the defendant says, but he doesn't specifically deny, I did not have that conversation with him at that time as he describes it. Correct. And that's why we're not talking about demerits here. We're talking about a hearing. Yeah. You know, there are – defense counsel did not deny that. The question here is whether his lawyer informed him that he had the right to testify, right? I'm sorry, Your Honor? The question is whether his lawyer informed him that he had the right to decide to testify, right? That's only part of it. Why is that only part of it? Well, because he also threatened him that he would leave the case if he asserted his right. So we've got several things going on. Well, if the lawyer said to him, maybe you dispute these facts, but just accept them for the hypothetical. If the lawyer said, well, look, you have the right to testify, but I think that that would be such an unwise decision that, like, I don't want to represent you if you decide to do that. The lawyer has explained to him his rights but also has said, like, I think it's, like, such a bad decision that, like, you've got to find a different lawyer if that's what you want to do. Would that be – would that be ineffective assistance? I think so. That's coercive. Why would it be? It's coercive. I mean, there's some circumstances in which if the client wants you to make – wants you to lie or make an argument that's contrary to law or so on, you're obligated to withdraw your representation. So let's – You're saying the lawyer is obligated to continue to represent him even if he's making a decision that he thinks is, you know, going to lose the case? I'm saying we need a hearing to find out if that's what counsel was getting at. We don't know that. I understand, but I just wanted to see, like, what we were trying to determine. And I thought what we were trying to determine is whether your client was informed of his right to testify. But now you're saying even if he knew he had the right to testify, it would be unconstitutional for the lawyer to say, well, you have the right, but I don't want to be part of it if this is what you choose to do. Possibly. You know, it would depend – But why would that be? Because it's coercive and it's preventing him from testifying by threatening him with circumstances – Well, that's not a given. We don't know that he would be able to find a different lawyer. You know, can he afford a different lawyer? But we have said that it is ineffective assistance if the lawyer does not inform the client of their right to testify. So I accept that. Have we said that it's also ineffective assistance if the lawyer says, I don't want to represent you if you make a really bad strategic decision? No, but that's not what's alleged here. It's more serious than that. It merits issue – Exactly. As to what the defendant would have to show or what possible theories the defendant might have. But whatever the theories are, the issue here has to do with whether the allegation of these things by the – more than allegation, the sworn testimony of the defendant as to these conversations is enough to get you a hearing. That's exactly right, Your Honor. Well, I don't know if it's a merits issue. I mean if the question is whether he had the right to testify, but the lawyer was allowed to say, I don't want to represent you if you make that decision, then even if you credit everything he says in the affidavit, there isn't an effective assistance, right? Because he has this argument with the lawyer. The lawyer says you shouldn't testify, and if you do, I'll quit. And he decides not to testify, not because he says, oh, the lawyer told me it was his decision to make, right? He seems to understand that he could insist on testifying, but then he might lose his lawyer, and that's why he decides not to. So actually, your claim depends on the idea that it would be ineffective for the lawyer to threaten to quit. No. My claim depends on the possibility that what was said was coercive enough to result in ineffective assistance, and we don't know what that is. This is happening, am I right, Mr. Leasure, not in the first meeting between the client and the lawyer, or even at a time when they're sitting around talking about what their defense strategy is going to be in an upcoming trial. This is where the trial has already started. We're talking, this conversation takes place during jury selection. Yes. Well, I mean that makes a big difference. I mean, you look puzzled as if I'm saying something hostile to you. I think I'm trying to help by suggesting that this is not quite the situation where you can always get another lawyer. This is not – I mean, after all, if any private – if you already spent all your mother's money hiring this lawyer, probably he's going to qualify for an appointed lawyer. Maybe if the lawyer says, I'm so disgusted with you, I'm just going to give you your money back and walk away, then you could retain another lawyer. But none of those are exactly live options at a time when the trial has already started. I mean, imagine going to the judge and having this conversation about withdrawing from the case. That's right, Your Honor. And it's also – remember, that's the second of the two allegations. The first is that he never told him that he had a right to testify to begin with. And that – we just don't have enough information. And we've got pretty solid allegations by the defendant. We've got the defense counsel not denying that he threatened, as was alleged, and not denying that he made that statement about shut the F up. I've been doing this for 40 years. We have no denials of that. We only have general – But there is a denial of the idea that he wasn't informed, right? Yeah. I take the point, as I've been talking about, that maybe there's some argument that he really did threaten him and said it would be very unwise. But my suggestion was actually even the defendant's affidavit is consistent with the idea that he knew it was his decision to testify. It's just that the lawyer was basically really pressuring him not to. Well, he didn't say that. You know, if you put all that evidence together, it's reasonable for the district court to conclude – It seems like he was informed of his right to testify.  The allegation, the statement in his affidavit is, Throughout my trial, Mr. Keehan never once told me that I had the constitutional right to testify and that I was free to exercise that right, even though he did not want me to. I did not learn that I had that right to testify until I visited the law library at Auburn Correctional Facility. That's what he says. Without that – that's right. Without that being definitively denied by the defense counsel, that's a specific – That is definitively denied. The defense counsel says I informed him of the right to testify. I'm sorry. I'm sorry. What I mean is by factual – you know, a factual statement that puts that to rest, and we don't have that. We have just a general denial. It is – Well, I guess – I guess what I was suggesting is there does seem to be kind of an inconsistency in the defendant's own affidavit where he's saying, Well, it seems like I could have insisted on testifying, but the lawyer would have quit, so I decided not to. And then he also says I never knew I had the right to testify. Well, no. He didn't push what he didn't know is what's happening. He didn't know he had the right to testify, but he knew he wanted to, and he didn't – he didn't continue with the wanting to because – The second problem of the Strickland test is prejudice, right?  And so the – Hansen does talk about what he would have testified to, right?  That he wanted to change the meeting of – the location of the meeting, that he was warned about being robbed, that the officers were in plain clothes and so on. All of that stuff got into the trial, right? Yes. There was video, and there were recordings showing that he wanted to change the location. It wasn't disputed that they were in plain clothes, and there was, again, video of it and so on. It wasn't a dispute that the officers never identified themselves as police. All beside the point. And the argument of – and counsel even got the jury instructed on a justification defense. Right. All beside the point. Because what the whole reason – the only reason the jury could have found in the – given all of that information that he was guilty and was not justified is by Investigator Ring's statement that you only say just kill me if you know you've shot a cop. And he wanted to testify that says, no, no, no, that is not the only thing that happened. I wanted to say just kill me for a different reason. Even that was before the jury, right? The idea was he said just kill me for a different reason because he was afraid of great abuse. That was not before the court. Defense counsel made a nonsensical statement during summation that he didn't want to face the wrath of the drug dealers. Well, he'd already been shot. What further wrath was there going to be? There was no explanation for the jury countering Ring's statement that if you say just kill me, you knew they were cops. And that's the only basis on which the jury could have convicted him. I guess two things. One is – well, even then, the statement is he must have known they were cops at the end of the encounter, which – right? Doesn't necessarily say that he knew them when they approached, right? He said all along that he did not know. Right. So if he said just kill me at the end when they were revealed as cops, it doesn't necessarily – but anyway. So what would he have testified to that would have undermined that statement that you think was the ground for the – That he was protecting his family. I don't know exactly what that means. The jury may have decided that it meant something different than – Yes, because – That's right. And because that's the only – I can't emphasize it enough – the only basis for the jury. It is a funny scenario, though, of course, in a self-defense case. On the one hand, the jury is not allowed to consider the defendant's invocation of his right to silence against him. But on the other hand, the defense in New York, justification defense, requires a reasonable belief that you are under threat. It's not enough that a reasonable person – it's required that your subjective belief is not enough. It's required that you show that a reasonable person would also have been afraid. But you do have to have a subjective belief. And I take it that at least one part of what the defendant is saying here is if I went there and told them how afraid I was and why I was afraid, they would believe that, which is a different thing than – now, of course, a reasonable defense lawyer might say, you know, once you do that, you've given up the reasonable doubt defense and the jury is going to just rely on whether they believe you or not. But it is a – it would be a different trial if the defendant testified. Maybe a riskier one, maybe a less risky one, whatever. What I would say to that is it would have been a reasonable strategy call for defense counsel to say you shouldn't. But it was also very reasonable for him to say he should because he wanted to tell the jury – he wanted to sit up there and look them in the eyes and say, I didn't believe it, and have them assess his credibility. And that was taken out of the case. But, Mr. Strickland, it wouldn't be enough to say what happened was reasonable and what he proposes was reasonable. We have to conclude that the absence of that testimony made a difference to the verdict. Right. And because of – It's not just one was reasonable, the other was reasonable. No, no, I understand. He would have failed if he had been able to go before the jury. I understand. But it could well have changed the whole course of the trial because we had this – I think this opinion is, you know, this is sort of expert opinion by the investigator that's the only reason someone would say such a thing. And he would stay up and say, no, there's a different reason. This is what I meant and this is why I said it. And, you know, the jury's looking at him. I don't think the court can say that that would have had no benefit. Thank you. All right. Well, you've reserved a minute for rebuttal. We'll hear now from Ms. Lato. Am I pronouncing that right? Lato.  Good morning, Your Honors. Carla Lato for Suffolk County District Attorney's Office. The district court had before it the unsubstantiated affidavit from Hansen. It had before it the detailed affirmation from Mr. Keon. And that affirmation indicated that he had discussed Hansen's right to testify with him not just once but twice. He explained the first time how we need to look at the evidence that the people present. And then when it came to the end of the people's case, Mr. Keon stated in the affirmation that he told his client it was his right to testify, that it was his decision as to whether or not he testifies, that Mr. Keon stated that he advised against it because he didn't think the people made out their case of attempted murder, and that it was indeed the defendant's, Mr. Hansen's, state decision that he would not take the stand. Now, given the unsubstantiated affidavit from Hansen and the detailed affirmation from Mr. Keon, the district court makes it detailed. I mean, the first part about having a discussion about the government needs to prove its case is actually not inconsistent with the lawyer having the decision as to whether he testifies, right? Because the lawyer might have been saying, let's see if the government proves its case, and then I'll tell you whether you should testify or not, right? I will advise you whether or not you should, not tell you whether or not you should. Well, okay, but, you know, he says, I never learned that I had the right to testify, and the lawyer says, I did tell him he had the right to testify, so why is one substantiated and the other is not substantiated? The – Hansen's affidavit has quotes, quotes that he claims that he remembers after five years after trial. He has the two affidavits from family members, but neither family member is indicating that they knew that the defendant wanted to testify and that they know that Hansen was intending on discussing this with Mr. Keon. Remember, we need, in order to warrant the hearing, the district court needs competent evidence in front of it, and it's our contention that – Well, that's competent evidence, right? I mean, this is the strange thing about the Chang decision. In an ordinary civil case where nobody's liberty turns on it, if a plaintiff says something that's not particularly likely, but swears to it under oath, that – and that is the only evidence that establishes an element of the cause of action. Summary judgment doesn't get granted. Here we have an exception to that general principle that if it's one person's word against another, that's something that we subject to the crucible of cross-examination. I recognize that the Chang decision says not quite in this situation, but why is that exactly? Because basically we think that defendants are less credible as a class than lawyers. I mean, is that really what it is? And therefore, in any situation – because, after all, you know, One of the things that's often said is that the defendant's allegation is there or is a conclusory. But, of course, if you're trying to prove a negative, it's hard to say anything much more than, he never told me that. If he never told me that, you say, he never told me it on this date when we had a conversation, he never told me on that date when we had a conversation. Does the client have to have asked the lawyer, why can't I testify? And the lawyer tells him, you have no right to make that decision. That's up to me, and trust me, because I'll do it right. What – you know, is that – if the simple fact is, I don't know anything about the law, and nobody ever told me that it's my decision to make, I was just told, you know, our strategy is something else, what – how detailed can that be? And similarly on the other side, right? I mean, the defendant is taxing Mr. Keehan because his affidavit says, look, we talked about this a bunch of times. I always told him it was his right, but I gave him advice, strongly worded advice that he shouldn't do it. Well, that's more detailed? I don't know. They're both kind of detailed. They both – you know, the defendant gives a version that has this whole, you know, profanity-laced – I'm going to walk away from the case, and I know what's best for you. The lawyer has an account of other conversations. I'm just puzzled as to what the limits of Chang, if any, there are. You know, when would – what would you have to do to get a hearing on this? We're dealing with a convicted defendant. So because the jury has already heard all of the evidence and made its determination, it is our contention that the defendant would have to provide more than just his self-serving statement in order to warrant a hearing. One example might be outcry witnesses. I mean, he tries to do that with his – that's what we call them in the rape context, right? That you told somebody else about this right close to the time when it happened. Which – And his family members don't quite fill the bill there. That is our contention, that his family members are not indicating that the defendant indeed had wanted to testify and was told by Mr. Keom that he couldn't. Well, regardless, we have to show prejudice. I mean, do you agree with Mr. Lager's account that the whole trial turned on the meaning of what he meant when he said, just kill me? No, not at all. The evidence that was presented was that Hanson had started these transactions with the undercover officer, that the undercover officer was rapidly increasing the amounts that he was purchasing. What is the evidence that he knew that the guys who approached the car were cops, the people that he shot were cops? That's the point. Twice, Hanson – Were they wearing badges? No. No, I will concede – Did they announce themselves as cops? No. No. However – So what is the evidence that was introduced at this trial to show that he understood that these were cops at the time he pulled the trigger? Hanson twice asked the undercover, are you a police officer prior to this meeting? Yes. And – What does that have to do with – Because Hanson already was suspecting that he was being set up by the police. And then after Hanson exited his car with the gun, investigator Ring yelled, down, down, down. And all of the men who got out of the two vehicles that had blocked in Hanson's car were crouched in a position taking cover just as a police officer would. So this does not turn just on kill me. Their conduct did not indicate that it was a robbery. They were acting like police officers. And the argument before the jury is like anyone would understand that somebody who's behaving that way is a police officer as opposed to a – Yes, but you have to take what happened right at the time of arrest with all of the evidence that came before where Hanson was questioning whether or not he was indeed working with the police in these sales. What about the question I had asked to Mr. Lager? So if a lawyer says to his client, you have the right to testify, but I think it's such an unwise decision that I don't want to represent you if you make that decision, would that be an effective assistance of counsel? Based upon those facts alone, I cannot say. Remember, we're dealing with a case that has already started. The trial has started. An attorney does not have the right to just say, I quit and walk away. They would still need the consent of the trial judge in order for that to happen. And quite frankly, I find it implausible that Mr. Keon would have even said something like that. If there are no more questions. All right. Thank you. Thank you, Ms. Latham. We'll hear from Mr. Lager for a minute or rebuttal. Yes. The district court relied on the trial court's ruling that you didn't need a hearing. And the court ignored the fact that you can dispense with a hearing only if there is no reasonable possibility that such allegation is true, meaning what Mr. Hansen alleged.  Sorry? What would the hearing reveal that the district court didn't get from the trial? It would reveal whether or not there was any kind of threatening conduct, why Mr. Hansen came up with this 40 years. Not every lawyer has 40 years of experience. That gives some credence to his statement of what counsel told him, which, by the way, is pretty graphic and pretty memorable, even five years hence. The credibility of each party would have been in question, and the court could have viewed that. There were plenty of things. But let me get around Chang. I think that really is the question. So Chang, I mean, we could fashion a rule that says whenever there is a he said, she said situation or a he said, he said situation, you have a hearing. Got to do it every time. But we haven't said that. We basically have required a person like your client to come up with more than just an after-the-fact assertion that I never was told I could testify. Because it's just too easy to do that after you've been convicted. So we've basically come up with a rule that says you've got to have a little more. And this is that little more you're out of? It seems to me the little more that you're offering is just that he's given a detailed assertion with quotes. And stating a fact. He's never said this to another person who says, yeah, he told me this, contemporaneous with when it happened. There's no other evidence that corroborates this other than you're saying it's a pretty good story he's come up with. No, there is something, and that is the fact that he had 40 years of experience. That corroborates his version of that statement. I think so. The counsel himself said, I told him that it's his decision to make, and then I strongly advised against it. Yes. Doing that with profanity, doing that with references to one's years would all fall under the strongly advised against it. The defense counsel did not say he used this language. So you're saying his failure to admit to a particular language and deny other language requires a hearing. I'm going to ask the rhetorical question, what more can defense defendant do with a he said, she said situation other than quote what was said? There is more in the case law. There's the United States razor against the United States where Judge Winter, who wrote Chang, writes an opinion saying, well, in this case, it's different. Essentially because in this case, it's the lawyer whose representations were kind of conclusory. There are a lot of cases out there where Chang is relied on. I think my lookbook had something like 70 of them where there's more said. It's not just if it's he said, she said, the defendant loses. It's certainly not. It's absolutely not if it's he said, she said, there's got to be a hearing. So there are a lot of cases, though, where there's some weighing and balancing of what kind of statement is it, how detailed is it, and so on. But it still winds up feeling like if that's the rule, aren't we again in a situation where we're relying on the district court to make some judgment? I understand that. But first of all, the district court, remember, relied on improper prong one ruling accepting the state court's. Well, that was before. Then we told her she was wrong and we went back to the. Yeah, but even in the last one, said that it was self-serving and there wasn't anything there, ignoring the no reasonable possibility that such allegation is true. Remember, we're talking about the state court's rule about there being a hearing, not necessarily just federal law. And that's clearly not true here. There was a reasonable possibility that such allegation is true. That statement, you know, you can I can imagine a hotshot lawyer making that statement to a client. I don't think that's crazy. And that's what it has to be in order for the court to say we don't need a hearing. So that's that's my argument. Well, thank you both. We will reserve decision.